SHEREE D. WRIGHT
Senior Counsel
IBF Law Group, PLLC
3101 N. Central Ave, Suite 1250
Phoenix, Arizona 85012
Telephone: (602) 833-1110
Facsimile: (602) 800-5701
e-Mail: sheree@ibflaw.com
SBN# NM 151522
SNB# AZ 035265

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Trischan, an individual, | Case No. 2:24-cv-03184-DJH |
| Plaintiff, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| Suns Legacy Partners, LLC, an Arizona limited liability company, | |
| Defendant, | |

1

**TABLES OF CONTENTS**

2

**Page**

3   I.    INTRODUCTION……………………...……………………………………....5

4   II.   SUMMARY OF ALLEGATIONS………………..……….…………………...6

5

6   III.   ARGUMENT………………………………………………..……………......8

          A.    Pacer's Inadvertent Technical Error Caused the Delay in Filing and Should
7               Not Result in the Dismissal of the Second and Third Causes of Action under

8               the ACRA…………………………………………………………..……..9
          B.    Arizona Worker's Compensation Is Not An Exclusive Remedy For Willful
9               Misconduct Related Negligence Claims…………………………………14

10         C.    Leave To Amend the First Amended Complaint Should Be Granted……….20
   IV.   CONCLUSION……………………………………………………………......23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*

5

    556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)……………………………....……20, 21

*Baker v. Pacific Far East Lines, Inc.,*

6

    451 F. Supp. 84, 89 (D. Cal. 1978)……………………………………………………....21

7

*Brigham v. Safeguard Sec. & Communs.,*
    No. CV 06-1622-PHX-MHM, 2007 LEXIS 115250 (D. Ariz. Sep. 14, 2007)…………………13

8

*Burton v. Real Prop. Inv. Servs.,*

9

    No. CV-10-8081-PCT-LOA, 2010 LEXIS 76913 (D. Ariz. July 27, 2010)…………………..18

10

*Cohen v. Ariz. State Univ.,*
    No. CV-21-01178-PHX-GMS, 2022 LEXIS 96886 (D. Ariz. May 31, 2022)……………12, 21

11

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,*

12

    911 F.2d 242, 247 (9th Cir. 1990)…………………………………………..……………..……20

13

*Craig v. M&O Agencies, Inc.,*
    496 F.3d 1047, 1060 (9th Cir. 2007)…………………………………………………..18

14

*Eichenberger v. Falcon Air Express Inc.,*

15

    No. CV-14-00168-PHX-DGC, 2014 LEXIS 106482 (D. Ariz. Aug. 4, 2014)…………………17

16

*Gamez v. Brush Wellman, Inc.,*

17

    201 Ariz. 266 (9th. Cir. 2001)…………………………………………………….......……14, 15

18

*Ford v. Revlon,*
    734 P.2d 585, 586 (Ariz. 1987) ……………………………………………....…….18

19

*Hopkins v. BMO Bank, NA.,*

20

    No. CV-24-00904-PHX-SPL, 2024 LEXIS 175384 (D. Ariz. Sep. 27, 2024)……………20, 21

21

*Irvin Investors, Inc. v. Superior Court,*
    166 Ariz. 113, 115, 800 P.2d 979, 981 (9th. Cir. 1990)……………..……….…….14, 18

22

*Macias v. Kaplan-Seikmann,*

23

    No. CV-22-00280-PHX-SPL, 2024 LEXIS 3402 (D. Ariz. Jan. 4, 2024)……………….......21, 22

24

*Miller v. Rykoff-Sexton, Inc.,*
    845 F.2d 209, 214 (9th Cir. 1988)…………………………………………………….......21

25

*Moses v. Phelps Dodge Corp.,*

26

    818 F. Supp. 1287, 1289 (D. Ariz. 1993)………………………………….………………9

27

28

*McElmurry v. Ariz. Dep't of Agric.,*
    No. CV-12-02234-PHX-GMS, 2013 LEXIS 81865, (D. Ariz. June 11, 2013)........................13

*Nazir v. United Airlines, Inc.,*
    178 Cal. App. 4th 243, 288, 100 Cal. Rptr. 3d 296 (2009).........................................…...…18

*Perkins v. Emplrs Mut. Cas. Co.,*
    507 F. Supp. 3d 1172, 1180 (D. Ariz. 2020)........………..............................14, 15

*Pinson v. Fed. Bureau of Prisons,*
    2024 U.S. Dist. LEXIS 154352.................................................................20

*Strand v. John C. Lincoln Health Network, Inc.,*
    No. CV-10-02112-PHX-NVW, 2011 LEXIS 36086 (D. Ariz. Mar. 31, 2011)........................12

*Tyler v. Boeing Co.,*
    No. CV 16-07610-AB (KSx), 2018 LEXIS 222297 (C.D. Cal. Feb. 2, 2018)........................18

*Uchikura v. Willis Towers Watson Call Ctr.,*
    No. CV-22-00002-PHX-DWL, 2023 LEXIS 96529 (D. Ariz. June 2, 2023)....................9, 10, 11

*White v. Relay Res.,*
    No. C19-0284-JCC, 2019 WL 5677541 (W.D. Wash. Oct. 31, 2019)................................20

**Statutes**

A.R.S. § 23-1022(A)....................................................................................14

A.R.S. 23-1022(B)......................................................................................14

A.R.S. § 41-1481(D)......................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................5, 20, 21

Fed. R. Civ. P. 8(a)(2).................................................................................20

Fed. R. Civ. P. 15(a)...................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Defendant Suns Legacy Partners, LLC ("SLP") has filed a Rule 12(b)(6) Motion to Dismiss four claims in Plaintiff Andrea Trischan's ("Trischan") First Amended Complaint ("FAC"). This Motion to Dismiss ("MTD") constitutes an unwarranted attempt to avoid accountability on procedural grounds that do not undermine the substantive merits of Trischan's claims. SLP's reliance on minor procedural delays and technical arguments fail to acknowledge the clear legal standards that favor allowing Trishan's claims to proceed.

Trischan's second and third causes of action under the Arizona Civil Rights Act ("ACRA") are timely and should not be dismissed. Trischan fully satisfied all administrative prerequisites, including obtaining a right-to-sue notice from the Arizona Civil Rights Division ("ACRD"), which explicitly set a filing deadline of November 13, 2024. Trischan met this deadline, and there is no valid legal basis to dismiss these causes of action. Any contention by SLP to the contrary misrepresents the procedural history and misapplies governing law.

Similarly, Trischan's fifth and seventh causes of action — for negligent infliction of emotional distress ("NIED") and negligent hiring, retention, and supervision — are well-grounded in Arizona law. These claims fall within the recognized exception to the state's worker's compensation law exclusivity provisions for "willful misconduct" by employers. The FAC includes sufficient factual allegations demonstrating SLP's willful misconduct, rendering dismissal of these claims improper. SLP's MTD is merely an effort to delay resolution of these valid claims on their merits.

To the extent the Court identifies any technical deficiencies in the FAC, Trischan respectfully requests leave to amend. If further factual specificity is required to address procedural concerns or substantive claims of willful misconduct, Trischan is prepared to provide additional evidence and clarifications. This approach aligns with the well-established principle that claims should be decided on their merits rather than foreclosed by procedural technicalities.

## II. SUMMARY OF ALLEGATIONS

In November 2021, **ESPN** published an investigative article exposing allegations of racially discriminatory conduct by Robert Sarver, the former majority owner of SLP.[1] The article detailed instances where Sarver reportedly used the [N-word] when referencing Black employees and engaged in inappropriate, misogynistic behavior. While Sarver and SLP denied these allegations, the **National Basketball Association (NBA)** initiated an independent investigation into Sarver's conduct during his tenure as majority owner of SLP.

On December 19, 2022, **ESPN** published a follow-up article revealing that other high-ranking executives within the organization had also participated in or were complicit in racial discrimination.[2] These executives included Jason Rowley (former President and CEO), Dan Costello (former Executive Vice President and Chief Revenue Officer), Kyle Pottinger (former Vice President of Ticket Sales and Services), and Melissa Goldenberg

---

[1] Baxter Holmes, *Allegations of racism and misogyny within the Phoenix Suns: Inside Robert Sarver's 17-year tenure as owner* (Sept. 13, 2022), available at https://www.espn.com/nba/story/_/id/32440987/phoenix-suns-robert-sarver-allegations-racism-misogyny.

[2] Baxter Holmes, *'When are others going to be held accountable?': Allegations of Suns misconduct extend beyond Robert Sarver*, (Dec 19, 2022) https://www.espn.com/nba/story/_/id/35252911/when-others-going-held-accountable-allegations-suns-misconduct-extend-robert-sarver

(former General Counsel). Although Rowley resigned following the acquisition of SLP by Mat Ishbia, the remaining executives stayed with the organization until the **Arizona Civil Rights Division (ACRD)** completed witness interviews. The article further revealed that those executives were not only involved in discriminatory conduct but were also aware of ongoing sexual and racial misconduct within the organization. Additionally, current employees described the human resources department as fostering a retaliatory environment, discouraging employees from raising concerns or reporting misconduct.[3]

In response to an NBA mandate to enhance its diversity, equity, and inclusion (DEI) initiatives, Suns Legacy Partners, LLC ("SLP") created the position of DEI Manager and hired plaintiff Andrea Trischan in October 2022. From the outset of her employment, Trischan became aware of significant race-related issues and misconduct occurring within the organization. In November 2022, Kim Corbitt, SLP's Senior Vice President of People & Culture, provided Trischan with a list of key executives to lead a newly formed diversity council. However, when Corbitt discovered that Trischan had received complaints implicating several individuals on that list, SLP, under Corbitt's direction, began targeting Trischan. Consequently, Trischan herself became the subject of discriminatory treatment. Despite raising these issues with Corbitt, her complaints were consistently dismissed or ignored. Ultimately, Corbitt relied on false information as a pretext to terminate Trischan's employment.

---

[3] *Id.*

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On November 13, 2024, Trischan filed a lawsuit against SLP and subsequently filed her First Amended Complaint ("FAC") on November 27, 2024. The FAC asserts seven causes of action: (1) Retaliation in violation of Section 1981; (2) Violation of the Arizona Law Against Discrimination (ALAD); (3) Retaliation in violation of ALAD; (4) Racial discrimination, disparate treatment, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964; (5) Negligent infliction of emotional distress (NIED); (6) Intentional infliction of emotional distress; and (7) Negligent hiring, retention, and supervision. SLP has moved to dismiss the second, third, fifth, and seventh causes of action.

The second and third causes of action were timely filed, as confirmed by the Arizona Civil Rights Division's ("ACRD") right-to-sue notice, which explicitly stated that Trischan had until November 13, 2024, to file her claims under the Arizona Civil Rights Act ("ACRA"). Trischan complied with this deadline. Nevertheless, SLP argues that Arizona's workers' compensation law preempts the fifth and seventh causes of action. This argument is baseless, as SLP's willful misconduct qualifies for an exception to Arizona's workers' compensation exclusivity provisions. SLP's continued reliance on this preemption claim reflects a clear attempt to evade accountability for its unlawful actions.

Given that all of Trischan's claims were timely filed, properly pleaded, and supported by factual allegations that demonstrate SLP's willful misconduct, its motion to dismiss is without merit. Accordingly, this court should deny SLP's motion in its entirety.

**III. ARGUMENT**

Under A.R.S. § 41-1481(D), a complaint related to an ACRA charge must be filed within one year from the date the charge is filed. However, Arizona law recognizes the doctrine of **equitable tolling,** which allows a plaintiff to extend an expired statute of limitations. As explained in *Moses v. Phelps Dodge Corp.*, 818 F. Supp. 1287, 1289 (D. Ariz. 1993); *see Uchikura v. Willis Towers Watson Call Ctr.*, No. CV-22-00002-PHX-DWL, 2023 U.S. Dist. LEXIS 96529, at *19 (D. Ariz. June 2, 2023) ("…equitable tolling permits a plaintiff to extend an expired statute of limitations when the delay is caused by circumstances that are deemed sufficiently inequitable or unjust").

A. **Pacer's inadvertent technical error caused the delay in filing and should not result in the dismissal of his Second and Third Causes of Action under the ACRA.**

SLP's assertion that Trischan's statute of limitations expired in August 2024 is a clear attempt to mislead the Court. A.R.S. § 41-1481(D), a complaint must be filed within one year of the charge filing date. Plaintiff's Right to Sue Notice unequivocally states, **"*On November 13, 2023, you filed a Charge of Discrimination.*"** See Exhibit 1. The notice further specifies, **"*Arizona law requires that you file your lawsuit no later than one year after filing your charge with the Division.*"** In *Uchikura v Willis Towers Watson Call Ctr.*, No. CV-22-00002-PHX-DWL, 2023 U.S. Dist. LEXIS 96529, at *19 (D. Ariz. June 2, 2023), the court rejected the defendant's motion to dismiss when a misleading right-to-sue notice caused confusion regarding the filing deadline.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Uchikura,* the court addressed the applicability of equitable tolling in the context of a misleading right-to-sue notice. *Id.* at 19-20. The plaintiff alleged that an EEOC investigator provided incorrect information during the intake interview, leading to confusion about the filing deadline. *Id*. The court considered whether this misinformation justified applying equitable tolling to extend the statute of limitations.

The plaintiff received a right-to-sue letter from the EEOC stating that his charge was not timely filed. *Id.* at 20. However, the plaintiff argued that he had been misled by an EEOC investigator during the intake interview, who allegedly informed him that he needed to hire legal counsel within 45 days to proceed with filing a charge of discrimination. *Id*. The court found that this misleading information could have caused confusion regarding the filing deadline, and thus, equitable tolling was applicable. *Id*. Consequently, the court denied the defendant's motion to dismiss, allowing the plaintiff's claims to proceed despite the expiration of the standard filing period. *Id*. at 21.

Similarly, Trischan reasonably relied on her Right to Sue Notice, which provided clear instructions about the filing deadline. Courts have consistently held that plaintiffs should not be penalized for following official guidance, particularly when misleading statements create confusion about critical deadlines. If SLP's argument is considered, it would effectively punish Trischan for adhering to the explicit terms of her notice, a result that is both unfair and inconsistent with the principles established in *Uchikura*. Even if SLP's assertion introduced ambiguity, the court could apply equitable tolling to account for any confusion caused by their misrepresentation.

Furthermore, public policy considerations weigh in Trischan's favor. Courts must encourage plaintiffs to rely on official notices to promote clarity and consistency in legal proceedings. Allowing SLP's argument to prevail would undermine this principle and incentivize Defendants to use misleading tactics to dismiss valid claims. The court in *Uchikura* recognized the importance of discouraging such behavior, and this reasoning should similarly apply here to reject SLP's assertion.

In conclusion, the reasoning in *Uchikura* supports Trischan's position and demonstrates why SLP's argument is meritless. Trischan complied with the filing deadline specified in her Right to Sue Notice, and any attempt to misrepresent this timeline should be disregarded by the court. Just as the *Uchikura* court prioritized fairness and protected the plaintiff from misleading information, this court should reject SLP's attempt to mislead and uphold Trischan's right to proceed with her claim.

Trischan's unwavering commitment to justice extends far beyond her personal pursuit; she seeks accountability for the systemic discrimination faced daily by minorities within SLP. Trischan's counsel maintained consistent communication with the ACRD investigator to understand her claim's status and eventual resolution. The investigator, however, made it clear that filing a lawsuit would result in the termination of their ongoing investigation. True to her nature as an advocate for herself and others in similar situations, Trischan allowed the investigation to continue, trusting the process and adhering to the November 13, 2024, deadline outlined in her right-to-sue notice. On November 8, 2024, Trischan's counsel received the formal determination from the ACRD via mail. Then, on November 11, 2024, the ACRD promptly delivered Trischan's entire claim file to her counsel. In keeping with

the legal timelines and her pursuit of justice, Trischan's claim was officially filed with the United States District Court for the District of Arizona on November 13, 2024.

On November 14, 2024, at 9:08 AM, Plaintiff received an email from the District Court's Clerk's Office stating, ***"The United States District Court for the District of Arizona received a $405.00 filing fee [omitted] to open a new civil case. The case opening documents were never received."*** See Exhibit 2. Upon receiving this notification, Plaintiff's counsel immediately contacted the Clerk's Office to investigate the apparent technical error's cause and explore prompt corrective measures to resolve the issue. At 10:40 AM on the same day, the Clerk's Office emailed, ***"The documents have been received…"*** See Exhibit 2. This demonstrates that within roughly one and a half hours, Plaintiff acted swiftly to submit the Complaint to the court. The technical error was not due to lack of diligence; on the contrary, Trischan's counsel took immediate and responsible action to resolve the issue.

Courts consistently apply a strict statute of limitations standard, particularly when plaintiffs fail to demonstrate due diligence in filing their claims. In *Cohen v. Arizona State University*, No. CV-21-01178-PHX-GMS, 2022 U.S. Dist. LEXIS 96886 (D. Ariz. May 31, 2022), the court held that the plaintiff should have filed his complaint by March 12, 2021. However, the plaintiff filed the complaint in July 2021—nearly four months after the deadline—resulting in a missed statute of limitations. Similarly, in *Strand v. John C. Lincoln Health Network, Inc.*, No. CV-10-02112-PHX-NVW, 2011 U.S. Dist. LEXIS 36086 (D. Ariz. Mar. 31, 2011), the plaintiff's suit was due on January 13, 2010, but was not filed until August 9, 2010.

1

2          In *McElmurry v. Arizona Department of Agriculture*, No. CV-12-02234-PHX-GMS,

3    2013 U.S. Dist. LEXIS 81865 (D. Ariz. June 11, 2013), the defendant filed their suit an

4    astounding nine months late, further illustrating the courts' reluctance to overlook missed

5    deadlines. In *Brigham v. Safeguard Security & Communications*, No. CV 06-1622-PHX-

6    MHM, 2007 U.S. Dist. LEXIS 115250 (D. Ariz. Sep. 14, 2007), the court ruled against the

7    plaintiff, who filed his ACRA claim six months after the "Notice of Right to Sue" deadline

8    had passed. In its ruling, the court emphasized that the plaintiff failed to exercise due

9    diligence, noting that the plaintiff had engaged in activities such as medical treatment, travel,

10   and attending religious services—activities that suggested he could have filed within the

11   prescribed time frame.

12         There is a clear and significant distinction between the cases cited and the present case

13   involving Trischan. In all of the cases mentioned, the plaintiffs missed their statute of

14   limitations by several months. In contrast, Trischan acted within the prescribed time frame,

15   and there is no evidence of undue delay on her part. While SLP correctly notes that the

16   EEOC issued the Notice of Right to Sue on November 15, 2024, they attempt to overlook a

17   crucial detail: the ACRD's Notice of Right to Sue specifies that Trischan's charge was filed

18   on November 13, 2023, and she was granted a full year to file suit. This gives her a clear

19   deadline of November 13, 2024**,** to take legal action. (MTD 5 ¶19) In fact, SLP seems to

20   agree with Trischan's interpretation, acknowledging that her deadline to file suit was indeed

21   November 13, 2024**.** (MTD 5 ¶28) This is the key date, and Trischan complied with the

22   required timeline. Unlike the plaintiffs in the cases mentioned above, who filed suit months

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

after their statutory deadlines, Trischan has exercised due diligence and adhered to the statutory timeframe as clearly outlined by the ACRD's notice.

### B.  Arizona Worker's Compensation Is Not an Exclusive Remedy for Willful Misconduct Related Negligence Claims.

It is well settled that worker's compensation is the exclusive remedy for injuries that arise out and in the course of employment. A.R.S. § 23-1022(A); *See Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, 34 P.3d 375, 378 (Ariz. Ct. App. 2001). Arizona law does provide an exception if the willful misconduct of the employer or co-employees causes the injury. *Perkins v. Emplrs Mut. Cas. Co.*, 507 F. Supp. 3d 1172, 1180 (D. Ariz. 2020). "Willful misconduct" is defined as "an act done knowingly and purposely with the direct object of injuring another." *Id.* (citing A.R.S. 23-1022(B). The exception should be pleaded in the complaint. *Id*.

Given the exception that worker's compensation is not the exclusive remedy for injuries caused by willful misconduct, Trischan's negligence claims should be allowed to proceed.

### *Negligent Infliction of Emotional Distress*

A.R.S. § 23-1043 "provides that injuries due to mental illness or condition are not compensable unless they are caused by some "unexpected, unusual or extraordinary stress related to the employment." See *Irvin Investors, Inc. v. Superior Court*, 166 Ariz. 113, 114-15, (Ariz. App. 1990). In *Irvin*, the court recognized that sexual molestation is an example of extraordinary stress that could render a mental injury compensable under workers' compensation law. *Id*. The plaintiff alleged that an employee of the defendant sexually

molested her, and while the plaintiff did not report the alleged misconduct to her district manager until after her resignation, this fact influenced the employer's ability to respond but did not negate the extraordinary nature of the stress she experienced. *Id*. The court acknowledged that the mental injury resulting from the sexual molestation fell into the category of unexpected, unusual, or extraordinary stress, satisfying the statutory exception under A.R.S. § 23-1043. *Id*.

SLP is unlikely to succeed in arguing that the emotional distress experienced by Trischan was "unexpected, unusual, or extraordinary." Both SLP and Corbitt were fully aware of the cultural issues within the organization, including racial discrimination against Black employees by key executives. Corbitt, in particular, knew that Mariscal was a detrimental force within SLP and should not have been assigned to work with Trischan. This deliberate assignment demonstrates intent to harm, rather than negligence.

Under Arizona Law, there must be a "deliberate intention" to harm, which distinguishes willful misconduct from gross negligence (internal quotation marks omitted). *Perkins v. Emplrs Mut. Cas. Co.*, 507 F. Supp. 3d 1172, 1180 (D. Ariz. 2020) (quoting *Gamez*, 34 P.3d at 378). In *Perkins*, the court held that even negligence in allowing a drug-impaired employee to drive did not rise to the level of deliberate intent. *Id*. In *Perkins*, the plaintiffs were en route to their job when their vehicle was struck by a co-worker, who was later found to be intoxicated. *Id*.  The plaintiff claimed that the co-worker had failed the employer's drug screening test but was nonetheless allowed to drive the employer's vehicle. *Id*. However, the court held that even if the employer was negligent in permitting an employee who failed a drug test to operate company vehicles, the plaintiff failed to prove

that the employer had any deliberate intent to cause harm to the plaintiff. *Id*. Here, however, the allegations in Trischan's FAC demonstrate that Corbitt and SLP acted with a deliberate and calculated ***intent*** to inflict emotional harm.

For instance, Corbitt forced Trischan to work alongside Mariscal, despite knowing Mariscal's history of racially insensitive remarks and discriminatory behavior. Corbitt's failure to address these concerns and her decision to assign Elizabeth Mariscal to work closely with Trischan reflect a direct intent to harm. Corbitt was fully aware of Mariscal's history of discriminatory remarks, including telling a group of Black employees, **"*They told us no, the only reason that you guys got Chick-fil-A was because you guys are Black and it's fried chicken*."** (FAC ¶ 40.) Corbitt was also aware of Mariscal submitting a false evaluation report about a Black intern. Yet, instead of taking action to address these issues, Corbitt chose to place Trischan in a position where she would be forced to continue working with Mariscal. This was a direct, intentional attempt to cause mental harm and distress

The FAC further details Corbitt's persistent campaign to discredit Trischan's work performance. In March 2023, Corbitt praised Trischan for her efforts for an event she coordinated, only to turn around the following day and accuse her of "acting aggressively" without providing concrete evidence or specifics to support the claim. This pattern of behavior illustrates that Corbitt and other employees deliberately fabricated false narratives about Trischan to undermine her confidence and tarnish her professional reputation.

Perhaps most egregious was Corbitt's decision to place Trischan on a Performance Improvement Plan (PIP) as a retaliatory measure. This action came shortly after an incident involving Trischan and a colleague, Jessica McNeese, in which Corbitt acknowledged that

the matter had been **"blown out of proportion."** (FAC ¶ ¶ 31,32.) Corbitt, even after, admitted that the situation was not as serious as initially portrayed. Trischan, understandably concerned for her job, provided Corbitt with an incident report detailing the events. Instead of addressing the issue in good faith, Corbitt pivoted to place Trischan on a PIP—an intentional act designed to create the appearance of poor performance and set the stage for her eventual dismissal, which would naturally cause mental harm to any individual. Even after Trischan successfully completed the PIP, in fact, completing it ahead of schedule, Corbitt remained resolute in her goal to terminate Trischan. The PIP was never meant to be a legitimate tool for performance improvement; it was a strategic move intended to create grounds for her dismissal. Corbitt's actions were not only unjust but designed with the clear objective of causing emotional and mental harm to Trischan, effectively forcing her into a hostile work environment where her mental health deteriorated and her career was jeopardized.

Arizona law also requires that claims for negligent infliction of emotional distress establish extraordinary stress related to employment. *See Eichenberger v. Falcon Air Express Inc.*, No. CV-14-00168-PHX-DGC, 2014 U.S. Dist. LEXIS 106482, at *11 (D. Ariz. Aug. 4, 2014). Unlike the plaintiff in *Eichenberger*, who failed to adequately plead the exception, Trischan's FAC provides compelling allegations that SLP and Corbitt acted with "malice, fraud, and oppression" and demonstrated a "conscious disregard for Plaintiff's rights and safety." These allegations highlight intentional and egregious misconduct, sufficient to overcome the exclusivity of worker's compensation laws.

Furthermore, public policy strongly affirms that "neither discrimination nor harassment is a normal incident of employment." See *Tyler v. Boeing Co.*, No. CV 16-07610-AB (KSx), 2018 U.S. Dist. LEXIS 222297, at *35 (C.D. Cal. Feb. 2, 2018) (citing *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 288, 100 Cal. Rptr. 3d 296 (2009)). While this principle arises from California law, it underscores the unacceptability of allowing such workplace practices to persist unchallenged.

### *Negligent Hiring*

An employee pursuing a claim of negligent hiring, supervision, or retention must provide evidence of intentional misconduct on the employer's part. *Irvin Investors, Inc. v. Superior Court*, 166 Ariz. 113, 115, 800 P.2d 979, 981 (Ct. App. 1990). In *Irvin*, the plaintiff alleged that a co-worker sexually assaulted her on two separate occasions. *Id*. After the second incident, she reported the assault to her district manager and resigned. The court held that the allegations did not constitute intentional misconduct because the employer was unaware of the co-worker's actions until after resignation. Instead, the employer's conduct was classified as an "unexpected injury-causing event" covered by workers' compensation *Id.* at 982; see also *Burton v. Real Property Investment Services*, No. CV-10-8081-PCT-LOA, 2010 U.S. Dist. LEXIS 76913, at *13 (D. Ariz. July 27, 2010). Arizona courts consistently hold that negligent hiring, supervision, and retention claims are preempted unless the employer's actions involve "willful misconduct" *Id.*; see also *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1060 (9th Cir. 2007), citing *Ford v. Revlon*, 734 P.2d 585, 586 (Ariz. 1987).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Trischan's First Amended Complaint (FAC) goes beyond ordinary negligence and demonstrates a pattern of willful misconduct by SLP. Rather than addressing Trischan's broader claims of negligent hiring, supervision, and retention, SLP focuses narrowly on "Negligent Hiring." This approach appears aimed at deflecting accountability. However, the FAC provides compelling evidence of SLP's misconduct, including specific allegations against Costello and Corbitt.

For instance, Costello, allegedly hindered the promotion of Black employees, favoring those who aligned with his views and expressed reluctance to promote a Black colleague due to perceived "influence within the organization." (FAC ¶ 6.) This reflects a pattern of discriminatory behavior that contributed to a hostile environment. Additionally, Corbitt, failed to address repeated instances of misconduct. Despite knowing of Mariscal's racially insensitive remarks and false reports, Corbitt chose not to reprimand Mariscal but instead pressured colleagues to tolerate such behavior. (FAC ¶ 24.) Corbitt also promoted McNeese despite her known dishonesty about significant matters involving Trischan. (FAC ¶ 25.) These actions illustrate SLP's deliberate indifference to complaints of discrimination.

Moreover, SLP's failure to comply with NBA-mandated reporting requirements for racial discrimination complaints reinforces its systematic negligence. Despite multiple reports from Trischan and other employees, SLP conducted superficial investigations that invariably dismissed such complaints without merit.

These facts support Trischan's claims of negligent hiring, supervision, and retention as a practice that perpetuated racial discrimination and emotional harm. Given the exception under Arizona law that workers' compensation does not preclude claims involving willful

misconduct, Trischan's claims should proceed. Her FAC outlines deliberate and egregious misconduct by SLP, sufficient to overcome preemption under workers' compensation laws. SLP's motion to dismiss is therefore unfounded and should be denied.

### C. Leave To Amend The First Amended Complaint Should Be Granted

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the non-moving party. Additionally, Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of the claim, sufficient to show that the pleader is entitled to relief and to provide the defendant with fair notice of the claim's nature and the grounds upon which it rests. The test for determining futility is the same as the test for determining whether a pleading survives a motion to dismiss under Rule 12(b)(6). *Pinson v. Fed. Bureau of Prisons, 2024 U.S. Dist. LEXIS 154352, *4*; citing *White v. Relay Res.*, No. C19-0284-JCC, 2019 U.S. Dist. LEXIS 189190, 2019 WL 5677541, at *1 (W.D. Wash. Oct. 31, 2019). Under that test, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the complaint's factual allegations must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Hopkins v. BMO Bank*, NA., No. CV-24-00904-PHX-SPL, 2024 U.S. Dist. LEXIS 175384, at *9 (D. Ariz. Sep. 27, 2024) and citing *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th

Cir. 1990)." Generally, the court expects the plaintiff's complaint to "plausibly give rise to an entitlement to relief." *Hopkins,* 2024 LEXIS 175384 at *, citing *Ashcroft*, 556 U.S. 662 at 678. Under Fed. R. Civ. P. 15(a), leave to amend is liberally granted in the interest of justice. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id. Miller*, citing *Baker v. Pacific Far East Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978).

In *Hopkins*, the court held that the plaintiff's claims were preempted, and ruled that granting leave to amend would be inappropriate ("…the claims against Defendant BMO fail to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary.") *Hopkins,* 2024 LEXIS 175384 at *9. In *Macias v. Kaplan-Seikmann*, No. CV-22-00280-PHX-SPL, 2024 U.S. Dist. LEXIS 3402, at *19 (D. Ariz. Jan. 4, 2024), the plaintiffs failed to meet the statute of limitations. They did not adequately plead the necessary facts to support a claim for intentional infliction of emotional distress. The court found " no evidence in the record to suggest [the defendants'] actions fall at the very extreme edge of the spectrum of possible conduct." *Id*. at 18-19. In contrast, in *Miller*, the court ruled that the defendant had presented sufficient evidence to establish a viable defense in. *Miller* , 845 F.2d at 214. Therefore, the trial court erred in denying the defendant's request for leave to amend. *Id*. Even when the plaintiff did not present the most compelling facts to support their claim, the court dismissed the case with leave to amend. *Cohen,* 2022 LEXIS 96886 at 25. ("Plaintiff's state law claim is time barred and dismissed with leave to amend

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

should Plaintiff wish to plead additional facts supporting equitable tolling on the AEPA claim.").

The cases above illustrate that a futile claim is one where the statutes of limitations are egregiously missed, and the plaintiff does a poor job of stating the facts for a claim. Trischan's claims do not violate the statutes of limitation; as SLP stated, the latest Trischan could file her complaint was November 13, 2024, and she did just that.  Furthermore, Arizona worker's compensation law does not preempt Trischan's negligent claims. Unlike in *Macias*, where the plaintiff did not adequately plead the facts for their claim, Trischan's FAC vividly illustrates how SLP's conduct was willful and intentional.

Trischan is fully prepared to provide any additional information required if this Court deems it necessary to amend the FAC. She is committed to revising the FAC to address the technical issues that specifically hindered her initial filing. Should the Court require further details on the negligence claim, Trischan is ready to submit compelling evidence demonstrating how Corbitt intentionally caused significant harm to her mental health. Moreover, Trischan is prepared to supplement the FAC with detailed facts regarding SLP and Corbitt's negligent hiring practices—specifically, recruiting individuals who were either complicit or actively encouraged discriminatory behavior. Trischan will also provide additional evidence showing that SLP and Corbitt instructed new hires to target and inflict harm on Black employees intentionally. Furthermore, the Complaint will be expanded to include evidence that SLP, Corbitt, and McNeese were fully aware of the ongoing discrimination and targeting of minority employees within the workplace. In particular,

Trischan will include evidence of Goldenberg's demeaning treatment of minority employees, with a specific focus on Black and Native American employees.

It is important to note that while a Complaint does not require exhaustive details at this stage, it must establish a sufficient factual basis for the claims. Trischan has conducted a thorough investigation into these matters and is ready to present all relevant evidence that the Court may deem necessary.

**IV. Conclusion**

In the interest of justice, Andrea Trischan requests a denial of SLP's motion to dismiss. The Complaint filed by Trischan was submitted on time and, in the interest of justice, should not be penalized for a minor technical error that was promptly corrected the following day—within approximately one and a half hours of receiving notice. Trischan reasonably relied on the November 13, 2024, deadline outlined in the ACRD Notice of Right to Sue letter, and her actions were consistent with the instructions provided therein. Furthermore, Trischan's Fifth and Seventh claims fall squarely within the exceptions specified under Arizona workers' compensation law. Given these facts, Andrea Trischan respectfully requests that the Court deny the Motion to Dismiss filed by Suns Legacy Partners, LLC.

DATED: January 24, 2025

IBF LAW GROUP, PLLC

By:    /s/ Sheree D. Wright_____
Sheree D. Wright
Attorney for Plaintiff

1
2
3

**CERTIFICATE OF SERVICE**

4

I hereby certify that on January 24, 2025, I electronically transmitted the attached

5

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

6

Notice of Electronic Filing to the following CM/ECF registrant(s):

7
8
9
10

Leah S. Freed
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
leah.freed@ogletree.com

11
12
13
14
15
16

Eric Amdursky
David Marroso
Damali A. Taylor
Fernando Rojas
2765 Sand Hill Road
Menlo Park, CA 94025
eamdursky@omm.com

17

I declare under penalty of perjury under the laws of the United States of America that

18

the following is true and correct.

19

Executed on January __24__, 2025, at Phoenix, Arizona.

20
21

By:  */s/ Sheree D. Wright*

22
23
24
25
26
27
28