Malcolm A. Heinicke* (CA Bar No. 194174)
Taylor L. Benninger* (CA Bar No. 344825)
Connor W. Hoge* (CA Bar No. 349884)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Malcolm.Heinicke@mto.com
Taylor.Benninger@mto.com
Connor.Hoge@mto.com

Craig Jennings Lavoie* (CA Bar No. 293079)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Craig.Lavoie@mto.com

Leah S. Freed (AZ Bar No. 021332)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Leah.Freed@ogletree.com

Attorneys for Defendant
Suns Legacy Partners, L.L.C.
* Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Trischan,<br><br>Plaintiff,<br><br>vs.<br><br>Suns Legacy Partners, L.L.C.,<br><br>Defendant. | No. CV-24-03184-PHX-SHD<br><br>**DEFENDANT SUNS LEGACY PARTNERS, L.L.C.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

## I. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Andrea Trischan was employed by Defendant Suns Legacy Partners, L.L.C. ("SLP") for less than ten months. During her short tenure, Plaintiff's performance and behavior were consistently unsatisfactory, including an incident in which she swore at colleagues in an open pavilion space—an incident for which she admitted at least some personal responsibility. Because of these issues, Plaintiff's manager Kim Corbitt placed Plaintiff on a performance improvement plan. Two months later, Ms. Corbitt concluded that Plaintiff had not demonstrated adequate improvement and terminated her employment.

Plaintiff brings claims for retaliation, race discrimination, and intentional infliction of emotional distress ("IIED"). Plaintiff's retaliation claim fails. Plaintiff cannot establish a prima facie case for two independent reasons: (1) she cannot establish protected activity because she admits that the SLP decisions or conduct about which she allegedly complained were lawful; and (2) in her testimony (and voluminous social media posts), she confirms her belief that she was terminated because of the pavilion incident, not because of any allegedly protected activity. Even if she could establish a prima facie case, her claim still fails because SLP has provided consistent, well-documented and non-retaliatory reasons for Ms. Corbitt's decisions, and there is no evidence that they were pretext for retaliation by Ms. Corbitt.

Similarly, Plaintiff cannot establish a prima facie race case. Even if she could, again, SLP has presented documented bases for Ms. Corbitt's decisions, and there is no evidence they were pretext for racial animus, let alone the "'specific' and 'substantial'" circumstantial evidence required to defeat summary judgment. *Hittle v. City of Stockton*, 101 F.4th 1000, 1016 (9th Cir. 2024) (quoting *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015)).

While this alone compels summary judgment, the baselessness of Plaintiff's race discrimination claim is particularly stark for two more reasons. ***First***, Ms. Corbitt made the decision to hire Plaintiff just ten months before making the termination decision. In such "same-actor" cases, a plaintiff must make an "extraordinarily strong showing of discrimination" to survive summary judgment. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005). ***Second***, both Plaintiff and Ms. Corbitt are Black women.

"When a decision maker is in the same [protected] group as the employee complaining about an adverse decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about." *Patocs v. Automatic Data Processing Inc.*, No. CV-20-01257-PHX-JJT, 2022 WL 2702507, at *10 (D. Ariz. July 12, 2022) (alteration in original). Plaintiff cannot come close to meeting these burdens here.

Plaintiff's derivative IIED claim fails on the same grounds. For these reasons, SLP respectfully requests that the Court grant its motion for summary judgment.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff's Role and Performance Issues

SLP employed Plaintiff from October 3, 2022 to July 25, 2023. Ex. 1 (Declaration of Kim Corbitt ("Corbitt Decl.")) ¶ 4. During her entire tenure, Plaintiff worked in SLP's People & Culture department in the role of "Diversity, Equity & Inclusion Program Manager." *Id.* ¶ 5. Her duties included the "design, communication, implementation, and follow-through of strategic Diversity & Inclusion initiatives"; "[l]ead[ing] the development and evolution of inclusive networks"; developing "a stronger pipeline of diverse talent"; "deliver[ing] employee training"; and being "an ambassador of [SLP's] brand, culture and values." Ex. 2 (Deposition of Plaintiff Andrea Trischan ("Trischan Depo.") Ex. 2) at 2–3.

Kim Corbitt, then SLP's Senior Vice President of People & Culture (now Executive Vice President and Chief Operations Officer), made the decision to hire Plaintiff into her at-will role. Ex. 1 ¶¶ 2–3, 6, 10. Ms. Corbitt was Plaintiff's only supervisor during her time at SLP. Ex. 3 (excerpts of transcript of Trischan Depo.) at 44:1–3. Ms. Corbitt and Plaintiff are both Black women. *Id.* at 44:22–45:4.

Soon after hiring Plaintiff, Ms. Corbitt found Plaintiff's performance unsatisfactory. In March 2023, Ms. Corbitt documented that Plaintiff's first six months had been "up and down." Ex. 4 (Trischan Depo. Ex. 14) at 2. Ms. Corbitt advised Plaintiff to focus on "checking in more often" and "being more inclusive in your thinking." *Id.* She also advised Plaintiff to "pause and actively listen[]" and to "stop[] allowing your emotions to take over." *Id.* (capitalization altered). The next month, Plaintiff acknowledged that she was "[w]orking

on listening more, being positive and optimistic," and that "[c]urrent challenges on [her] end" were "communication and accountability." Ex. 5 (Trischan Depo. Ex. 15) at 3.

In a performance review on May 15, 2023, Ms. Corbitt gave Plaintiff extensive feedback, including that among her "challenges" were "how to FOCUS and take ownership" and be more "positive/optimistic." Ex. 6 (Trischan Depo. Ex. 16) at 11. Ms. Corbitt stated in the performance review document, "My desire is for [Plaintiff] to be successful, but it will be her ability to adapt and work in a different way that will be key for that to happen." *Id.* Plaintiff cannot and does not dispute that she received this feedback from Ms. Corbitt on May 15, 2023. Ex. 3 at 166:18–172:7.

**B. The "Pavilion Incident"**

Multiple SLP employees reported to Ms. Corbitt that, on Monday, May 22, 2023, Plaintiff was involved in an incident in SLP's arena pavilion. Ex. 7 (Trischan Depo. Ex. 17) at 2; Ex. 8 (message from Jennifer Degasis to Ms. Corbitt) at 3; Ex. 3 at 197:12–21. Robert Smith, an Employee Relations Lead who was present, reported in writing as follows:

- Plaintiff approached several colleagues to raise interpersonal issues;
- As Plaintiff attempted to address the group, one colleague's attention was diverted and Plaintiff requested that she "come back to the group";
- When that colleague "did not return, as [Plaintiff] asked, [Plaintiff] made a statement, 'this is what the f**k I'm talking about' and then stormed off";
- Plaintiff "ran into a group [of] film people" who were nearby and presumably witnessed the incident, and Mr. Smith "heard [Plaintiff] apologize to the film crew for using the curse word";
- Plaintiff's colleagues followed her and "asked her what was wrong";
- Plaintiff "began to have a conversation that was inappropriate for the current team in her presence, the place that the conversation took place, and how she was conducting the conversation, regarding how different people on the team felt about other people on the team."

Ex. 7 at 2. Later that day, one employee told Mr. Smith that she was "uncomfortable" after the incident. *Id.* Plaintiff admitted during her deposition that she used profanity during the incident ("we either need to communicate or just f**k it") and that she bears some responsibility for the incident escalating. Ex. 3 at 190:10–14, 199:24–200:5.

Ms. Corbitt placed Plaintiff on paid administrative leave for just one full day pending investigation. Ex. 9 (Trischan Depo. Ex. 18) at 2; Ex. 1 ¶ 7; Ex. 3 at 671:20–21 (Plaintiff returned from leave on Wednesday). Ms. Corbitt's investigation overview stated that during the pavilion incident, Plaintiff "rant[ed] about the team using inappropriate language and being nega[ti]ve about people on the team with others around including a film crew," and Plaintiff "started cursing and elevated her voice." Ex. 9 at 2. Employee Monet Newton, present for the incident, told Ms. Corbitt that Plaintiff "handled it terribly." *Id.* at 4.

Ms. Corbitt spoke with Plaintiff multiple times during the investigation, and Plaintiff admitted to initiating the encounter and cursing but asserted that a different employee, Jessica McNeese, escalated the situation and called Plaintiff "aggressive." Ex. 10 (Trischan Depo. Ex. 19) at 2, 4–5.[1] Plaintiff admitted Ms. Corbitt told Plaintiff "that she was losing faith" in Plaintiff. *Id.* at 5. And Plaintiff stated, "I have some responsibility in the interactions that occurred and will not engage any further in employee related incidents" or "team member relations, gossip, or drama." *Id.* at 2. Ms. Corbitt responded to Plaintiff:

- "I do think it's possible for you to act aggressively and that is not connected to anything but the fact that all of us can act and respond aggressively . . . it wasn't one person who shared that your tone was elevated and you were aggressive in your language[,] it was multiple people on the team";

[1] Plaintiff has asserted that there should be videotape of the incident, but she already knows why such tape does not exist: As former SLP security employee Gene Traylor testified, per standard procedure, security footage is deleted after 30 days. Ex. 11 (excerpts of transcript of deposition of Gene Traylor) at 230:20–25. In any event, Mr. Traylor testified that he viewed the footage of the pavilion incident around the time of the incident and that it was "inconclusive." *Id.* at 112:21–114:25. Mr. Traylor so testified even though (per Plaintiff) "he has been supportive of [Plaintiff] since [she] left the Suns and in this case," Ex. 3 at 716:18–717:2, and even though he himself has also sued SLP, represented by the same counsel as Plaintiff. Mr. Traylor also testified that Plaintiff contacted him on August 22, 2023 (well over 30 days after the incident, and almost a month after she was fired) to see if he could provide her with the footage. Ex. 11 at 162:14–170:12. Mr. Traylor told her that he could not assist (given that it had already been deleted and because it would have been "inappropriate to share security video to someone outside the organization"). *Id.* Plaintiff responded, "I figured." *Id.* at 170:6–12.

- "[W]hen you are upset you can become unapproachable . . . have used inappropriate language and your frustration does become clearly visible. We have had that conversation before";
- "[I]n your role focusing on inclusion is very important . . . you purposely cancelled a meeting and told a team member that it wouldn't be productive because people didn't like them. In your role those things are critically important that we don't do."

Ex. 12 (Trischan Depo. Ex. 20) at 2.

### C. Performance Improvement Plan and Eventual Termination

Based on her investigation, Ms. Corbitt concluded Plaintiff's behavior "was in viola[ti]on of team policies and company polices," noting that "[w]e had had prior conversa[ti]ons about emo[ti]onal responses and the importance of inclusion as a Diversity & Inclusion manager." Ex. 9 at 2. Ms. Corbitt placed Plaintiff on a Performance Improvement Plan ("PIP") starting May 31, 2023. *Id.*; Ex. 13 (Trischan Depo. Ex. 22) at 2; Ex. 3 at 224:23–226:4, 230:23–234:2.[2]

The PIP included a list of objectives and tasks, including: "Focus on . . . day to day responsibilities"; "Uphold the respect in the workplace standards"; "Serve as a role model of inclusion"; "[B]e on time and present for meetings"; "Manage emotions and frustrations in a productive manner"; "Build a training plan"; "Refresh and progress the engagement in the Team Member Network[s]"; and "Re-engage in the process on DEI Recruiting Initiatives." Ex. 13 at 3. The PIP was initially planned to last 30 days, from May 31, 2023, to June 29, 2023. *Id.* at 2–3. But because Plaintiff was out of the office for a vacation and then to attend a conference, Ms. Corbitt doubled the PIP period to allow Plaintiff more time to show improvement. Ex. 3 at 239:1–241:5. Plaintiff then asked to attend a second conference during the PIP period, but Ms. Corbitt told her to "focus on moving some work forward." Ex. 14 at 2.

---

[2] Two others, including Ms. McNeese, also received discipline following the pavilion incident. Ms. McNeese "was provided coaching on [ti]me and place to engage in conversa[ti]ons around situa[ti]ons" and Mr. Smith was "provided coaching that he can always intervene if he sees something in[]appropriate." Ex. 9 at 2.

Ms. Corbitt also solicited feedback on Plaintiff's performance from colleagues, who reported to Ms. Corbitt the following (among other things):

- Plaintiff should improve "communication on DEI initiatives," Ex. 15 at 2;
- Plaintiff should improve her "communication" because "I've sat in meetings waiting for [Plaintiff] to show up, had to cancel, and reschedule meetings multiple times," Ex. 16 at 2; and
- Plaintiff "doesn't seem happy here; in meetings with junior level team members she regularly . . . sighs exasperatedly, seems resigned. It isn't inspiring and I don't think it's professional," Ex. 17 at 2.

Subsequently, Ms. Corbitt documented various issues with Plaintiff's performance during the PIP period. On one occasion, Plaintiff sent a company-wide email after being told not to. Ex. 18 (Trischan Depo. Ex. 23) at 3. On another occasion, Plaintiff "committed to send" slides to Ms. Corbitt but did not do so, requiring Ms. Corbitt to have to "follow[] up twice" to get them. *Id.* at 4. Ms. Corbitt also documented that by week six of the PIP period, Plaintiff was still struggling with being proactive and completing tasks on time. *Id.* at 5. Ms. Corbitt noted that Plaintiff's "intentions are there it's just her execution." *Id.*

In the second-to-last week of the PIP period, Plaintiff requested "clarification on what success looks like." *Id.* Ms. Corbitt "re-discussed the priorities" of recruiting, retention, and collaboration, and stated she was "unsure about the results" of the PIP "because it's been inconsistent," with "gap[s] in time to deliver" and lack of "information along the way." *Id.*

At the end of the PIP period, Ms. Corbitt concluded that:

> [Plaintiff] has not met my overall expectations on the Accelerate improvement plan. She has made progress on outcomes, but gaps exist in communication, productively engaging team members to deliver a collaborative outcome and consistency on follow up and follow through. The length of time to deliver key work priorities and the lack of sharing status and information along the way of the work doesn't set up a productive working environment. The outcome of the frustration has made it challenging to consistently lead in the space of Diversity, Equity and Inclusion.

*Id.*

Based on these performance issues, Ms. Corbitt made the decision to terminate Plaintiff's employment and then communicated that decision to Plaintiff on July 25, 2023.

Ex. 3 at 256:23–257:1, 657:10–12. Plaintiff admits that Ms. Corbitt gave her three reasons for the termination: "[Y]our performance is too up and down, you don't work well with others," and "I don't believe you can create an inclusive environment." *Id.* at 257:19–22, 659:11–661:8. Plaintiff also admits that (1) the three performance reasons provided by Ms. Corbitt for the termination were the only reasons given; and (2) she does not know why Ms. Corbitt made the termination decision. *Id.* at 665:1–666:9, 681:6–24.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Potter v. Collins*, 822 F. Supp. 3d 1049, 1052 (D. Ariz. 2026) (Desai, J.) (quoting Fed. R. Civ. P. 56(a)). A "fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id.* (quoting *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)). A party opposing summary judgment must "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one" and requires "more than the mere existence of a scintilla of evidence." *Id.*

## IV. ARGUMENT

SLP respectfully requests summary judgment on Plaintiff's three remaining claims. (The other claims in the operative complaint have been dismissed. *See* Docs. 48, 93.)

### A. Plaintiff's § 1981 Retaliation Claim Fails (Count I)

Courts evaluate § 1981 retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Plaintiff first must "establish a prima facie case of retaliation" by showing that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Id.* at 1107–08. Second, if Plaintiff establishes a prima facie case, the burden shifts to SLP to put forth evidence of "a legitimate, non-retaliatory reason" for the adverse employment actions. *Id.* at 1108. If SLP does so, the

burden then shifts back to Plaintiff to put forth "evidence to show that the stated reasons were a pretext for retaliation." *Id.* Plaintiff's claim fails for three independent reasons.

***1. Plaintiff Cannot Establish a Prima Facie Case.***

Plaintiff cannot establish a prima facie case for two independent reasons. ***First,*** Plaintiff did not engage in any protected activity. For purposes of § 1981, "[a]n employee engages in protected activity when [s]he opposes conduct that [s]he reasonably believes to be an unlawful employment practice . . . under section 1981," in other words, "an unlawful practice of racial discrimination." *Hollis v. Randstad N. Am. Inc.*, No. CV-25-02144-PHX-JJT, 2025 WL 1754747, at *2 (D. Ariz. June 25, 2025).

Plaintiff's conduct during the pavilion incident was not protected activity because Plaintiff was seeking to address interpersonal dynamics, not opposing race discrimination. Ex. 10 at 4 (Plaintiff statement that she was raising team "issues with one another"). To the extent that Plaintiff believed that she was engaged in protected activity by providing a statement to Ms. Corbitt about the pavilion incident (*see, e.g.*, Ex. 3 at 670:14–671:19), she was unreasonably mistaken. *See Miller v. Lucas*, No. 3:16-cv-01947, 2018 WL 4441534, at *4 (M.D. Pa. July 20, 2018) ("Nor does defending oneself against misconduct charges constitute protected activity."), *accepted by* 2018 WL 4404675 (M.D. Pa. Sept. 17, 2018).

To the extent Plaintiff claims she raised concerns about DEI-related topics, this was not protected activity because Plaintiff admits she did not believe the practices to be unlawful (and they were not): specifically, Plaintiff did not believe the membership selection of an internal diversity council was unlawful. Ex. 3 at 679:11–680:2. Nor did Plaintiff believe that any alleged noncompliance with NBA directives was unlawful; rather, she believed it was "in poor taste." *Id.* at 680:4–681:5. Complaints about lawful conduct that Plaintiff admittedly believed to be lawful are not protected activity as a matter of law. *See Hollis*, 2025 WL 1754747, at *2.

***Second,*** Plaintiff cannot establish a prima facie case for the independent reason that, even if she had engaged in protected activity, there is no evidence that such activity was the but for cause of the adverse employment actions. Indeed, Plaintiff testified that she does not

believe Ms. Corbitt put her on the PIP or terminated her because she "made a complaint or looked into things." Ex. 3 at 667:15–24. Rather, Plaintiff testified that she believes she was "fired as a result of the pavilion incident"—not any supposed protected activity. *Id.* at 56:8–10, 224:23–226:4. She has confirmed this belief in her voluminous social media posts (while also making outrageous and false allegations against SLP, the courts, and others).[3]

Plaintiff admits SLP did not give her, and she has not seen, any reasons for her termination other than those provided by Ms. Corbitt. Ex. 3 at 660:8–661:8, 681:6–24. Plaintiff admits she does not know why Ms. Corbitt terminated her. *Id.* at 665:1–666:9. This further dooms her claim. *See, e.g.*, *Oliver v. Spokane Cnty. Fire Dist. 9*, 963 F. Supp. 2d 1162, 1173 (E.D. Wash. 2013) (granting summary judgment in part because "[p]laintiff has admitted that he does not know if any adverse action was taken against him as a result of his speaking out"); *Madrid v. Vivint, Inc.*, No. 5:17-CV-00298-SVW-KK, 2018 WL 1414570, at *3 (C.D. Cal. Jan. 25, 2018) (plaintiff's "speculative opinion that that he was

[3] "My Truman Show Episode 11: Andrea Trischan v. Phoenix Suns and Mercury," (June 24, 2026), https://www.youtube.com/watch?v=E8LwQFL2bVE, at 2:19 ("the pavilion incident happened, and that is why I got put on a PIP"); "Episode 66: Andrea T. vs. Phoenix Suns and Mercury – What You Should And Should Not Do Pt. 4," (July 28, 2026), https://www.youtube.com/watch?v=5hwpE9yAFiU, at 0:47 ("I was fired because a white female named Jessica McNeese yelled at me"). While it is not necessary to review Plaintiff's more than 90 social media videos to resolve this motion, her many aspersions concerning this case validate the accountability and behavioral issues Ms. Corbitt encountered with Plaintiff. For example, Plaintiff has accused SLP, its ownership, or its counsel of seeking to "plant drugs in [her] vehicle," "take people's life," "stalk people," "pay a court clerk," "bribe a judge," "pay judges off," and conspire with "powerful people in the Mason organizations" or "white and Jewish" lawyers at the Department of Justice. "Episode 41: Andrea Trischan v. Phoenix Suns and Mercury, The Media, Monet Newton, and Nolan Wells" (July 10, 2026), https://www.youtube.com/watch?v=GBEcb4_TaIo at 3:46; "Episode 58: Andrea T. vs. Phoenix Suns and Merc - What You Should And Should Not Do Pt. 2" (July 19, 2026), https://www.youtube.com/watch?v=bGpbx12C99o at 4:19; "Episode 59: Andrea T. vs. Phoenix Suns - The Clowns They Involved Pt. 2" (July 19, 2026), https://www.youtube.com/watch?v=nb8yOEDttTU at 0:29; "Episode 75: Andrea T. vs. Phoenix Suns and Mercury - What You Should And Should Not Do Pt. 5" (Aug. 4, 2026), https://www.youtube.com/watch?v=5XSDQRYZ3W0 at 1:52.

fired for" protected activity "is simply insufficient to raise a triable issue of fact, especially in light of [p]laintiff's own deposition testimony that he does not know why he was fired").

### *2. Ms. Corbitt Had Legitimate Reasons and Plaintiff Cannot Provide Any Evidence of Pretext.*

Even if Plaintiff could state a prima facie case, SLP easily satisfies its burden to show legitimate, non-retaliatory reasons for the adverse employment actions. Ms. Corbitt placed Plaintiff on paid administrative leave for one day while Ms. Corbitt was investigating the pavilion incident, reported by multiple colleagues, because Plaintiff's desk was in a shared space.[4] Ex. 1 ¶ 7; Ex. 9 at 2. After her investigation, Ms. Corbitt concluded Plaintiff "was in violation of team policies and company policies" despite "prior conversa[ti]ons about emo[ti]onal responses and the importance of inclusion as a Diversity & Inclusion Manager." Ex. 9 at 2. For these reasons, Ms. Corbitt placed Plaintiff on a PIP. *Id.* (listing PIP as "Correc[ti]ve Ac[ti]on" for the incident); Ex. 10 at 3 (email from Ms. Corbitt to Plaintiff listing "a 30 day plan" among "next steps" after the incident); Ex. 3 at 56:8–10, 224:23–226:4 (testimony by Plaintiff that she was placed on the PIP due to the pavilion incident).

Finally, Ms. Corbitt terminated Plaintiff's employment with SLP because Ms. Corbitt concluded that Plaintiff had "not met [her] overall expectations" by the end of the PIP period. Ex. 18 at 5. Among other issues, Ms. Corbitt noted Plaintiff's struggles with "communication, productively engaging team members" and "consistency on follow up and follow through." *Id.* Plaintiff herself testified that Ms. Corbitt explained her three reasons for the termination as: "[Y]our performance is too up and down, you don't work well with others," and "I don't believe you can create an inclusive environment." Ex. 3 at 257:19–22, 659:11–661:8. In short, Ms. Corbitt concluded that because Plaintiff could not "consistently

---

[4] Plaintiff's one day of paid administrative leave was not itself an adverse employment action. *See Prouty v. Saul*, No. CV 18-8567 PA (JPRx), 2020 WL 4518605, at *1, 5 (C.D. Cal. June 29, 2020) ("[n]umerous district courts in this Circuit have concluded that paid administrative leave does not constitute an adverse employment action"; six-day leave not adverse employment action).

lead in the space of Diversity, Equity and Inclusion," Ex. 18 at 5, she could not remain as SLP's "Diversity, Equity & Inclusion Program Manager," Ex. 1 ¶ 5.

Because SLP has shown these legitimate reasons for the adverse actions, Plaintiff must present sufficient evidence of pretext. *Surrell*, 518 F.3d at 1108. "[T]o establish pretext at the summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (affirming summary judgment for employer on Title VII and § 1981 retaliation claims, holding a "reason is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason," noting it "is the plaintiff's burden to provide evidence from which one could reasonably conclude that but for her alleged protected act, her employer would not have fired her") (emphasis in original, internal quotation marks and brackets omitted). Here, the record is devoid of any direct or circumstantial evidence that Ms. Corbitt's decisions were pretextual, let alone the sort of "'specific' and 'substantial'" circumstantial evidence required by Ninth Circuit precedent. *Hittle*, 101 F.4th at 1016 (quoting *France*, 795 F.3d at 1175).

Instead, the record is overflowing with evidence showing that the reasons for all alleged adverse actions were entirely consistent and plausible. Ms. Corbitt's concern about Plaintiff's communication, inclusivity, and behavior were consistently documented: In March 2023, Ms. Corbitt gave Plaintiff feedback that she should "check[] in more often," "be[] more inclusive," and "stop[] allowing your emotions to take over." Ex. 4 at 2. On May 15, 2023, Ms. Corbitt gave Plaintiff further extensive feedback, stating, "My desire is for [Plaintiff] to be successful, but it will be her ability to adapt and work in a different way that will be key for that to happen." Ex. 6 at 11.

When the pavilion incident occurred (just one week after Ms. Corbitt communicated to Plaintiff that she was not currently "successful" in her job, *id.*), Ms. Corbitt received a detailed incident report from an Employee Relations Lead who witnessed the event and

interviewed the people involved, including Plaintiff. Ex. 7 at 2; Ex. 9 at 2–3. Plaintiff confirmed in writing that Ms. Corbitt had told her "that she was losing faith" in Plaintiff's "ability . . . to continue being the Diversity, Equity and Inclusion Manager because none of this is equitable or inclusive." Ex. 10 at 5. Plaintiff further acknowledged that she cursed at her colleagues and had "some responsibility in the interactions that occurred." *Id.* at 2, 4.

The resulting PIP tracked Ms. Corbitt's expressed concerns, directing Plaintiff to "[f]ocus on . . . key work duties and job description"; "[m]anage emotions and frustrations in a productive manner" and "[s]erve as a role model of inclusion." Ex. 13 at 3. At the end of the PIP period, Ms. Corbitt made the termination for similar reasons, explaining: "[Y]our performance is too up and down, you don't work well with others," and "I don't believe you can create an inclusive environment." Ex. 3 at 257:19–22, 659:11–661:8. Ms. Corbitt's decisions were not pretextual; they were rooted in well-documented performance concerns.

Plaintiff has suggested that the pavilion incident was "one gigantic lie" told *to* Ms. Corbitt *by* multiple colleagues. *Id.* at 723:18–724:1, 746:20–748:8. This precludes her claim in two independent ways. First, even if that were true (it is not), it would not show pretext. "In judging whether" the "proffered justifications were 'false,' it is not important whether they were *objectively* false." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). "Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)). Second, if Ms. Corbitt took actions against Plaintiff because she was given misleading information by others (not so here), then any alleged protected activity *could not* be a "but for" cause of those actions. *See Comcast Corp. v. Nat'l Ass'n of Af. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

**B. Plaintiff's Title VII Claim Fails (Count IV)**

***1. Plaintiff's Race Discrimination Claim Fails.***

Plaintiff's Title VII claim is subject to the same burden-shifting framework. *Surrell*, 518 F.3d at 1105–06. Plaintiff must (1) establish a prima facie case that race was a "motivating factor" driving the adverse employment actions; and (2) put forth sufficient

evidence that SLP's legitimate reasons were pretext for race discrimination. *Hittle*, 101 F.4th at 1012, 1016 (quoting 42 U.S.C. § 2000e-2(m)). She cannot do either.

*(a) Plaintiff Cannot Establish a Prima Facie Case.*

Plaintiff cannot state even a prima facie case because there is no evidence that Plaintiff's race was a "motivating factor" driving the adverse employment actions. *Id.* at 1016 (quoting 42 U.S.C. § 2000e-2(m)). Plaintiff testified that she "think[s] race had everything to do with the lies" she believes colleagues told Ms. Corbitt. Ex. 3 at 230:13–22. But, she cannot offer any evidence to support this speculation, and this alone dooms her claim. Indeed, Plaintiff admits that she has no reason to believe Mr. Smith (who is Black, like Plaintiff) had a "racially motivated reason to misrepresent what happened." *Id.* at 204:4–17. Furthermore, even crediting such speculation—that Plaintiff's colleagues lied *and* were motivated by race—that is not evidence that race motivated *Ms. Corbitt*—the undisputed decision-maker for each adverse action. *Id.* at 256:23–257:1, 657:10–12; Ex. 9 at 2.

Nor can Plaintiff meet her prima facie burden by showing she was "treated less favorably than others similarly situated on account of race." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)). To do so, Plaintiff "must identify employees outside her race . . . who were similarly situated to her 'in all material respects' but who were given preferential treatment"; those employees "must 'have similar jobs and display similar conduct.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quoting *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)). "[S]ome similarities" are insufficient, *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006); an employee who "did not engage in problematic conduct of comparable seriousness" is not similarly situated. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004).

Plaintiff has not (and cannot) identify a similarly situated employee. First, no other employee had a similar role as Plaintiff; i.e., a DEI role that would make non-inclusive problematic behavior especially concerning, as Ms. Corbitt repeatedly noted. *E.g.*, Ex. 9 at

2, Ex. 10 at 5, Ex. 12 at 2. Second, Plaintiff does not (and cannot) identify comparators similarly situated in terms of performance and behavior. Plaintiff has suggested four colleagues as comparators. Ex. 3 at 233:8–238:25. But one is (like Plaintiff) a Black woman, *id.* at 237:2–4, and so is not a comparator "outside her race," *Campbell*, 892 F.3d at 1015). Further, for all four supposed comparators, Plaintiff testified that her impression of their job performance was based on hearsay. Ex. 3 at 233:8–238:25. There is no evidence that they had similar performance or behavior issues to Plaintiff, *e.g.*, Ex. 4 at 2; Ex. 6 at 11; Ex. 9 at 2; Ex. 12 at 2, or that colleagues reported communication or behavior issues with these other employees, as with Plaintiff, Ex. 15 at 2, Ex. 16 at 2, Ex. 17 at 2. In short, no employee with a "similar job[]" "display[ed] similar conduct." *Campbell*, 892 F.3d at 1015.

*(b) Plaintiff Cannot Provide Sufficient Evidence of Pretext.*

Even if Plaintiff could satisfy the first step (she cannot), SLP easily satisfies its burden to provide non-discriminatory reasons for the adverse employment actions. *Supra*, pp. 10–12. As such, the burden shifts back to Plaintiff to show that Ms. Corbitt's reasons for her decisions were pretext. There is no such evidence. Again, Ms. Corbitt acted because of Plaintiff's consistent and well-documented performance issues, including challenges with managing her emotional reactions appropriately in the workplace. *E.g.*, Ex. 4 at 2 ("be[] more inclusive" and "stop[] allowing your emotions to take over"); Ex. 10 at 5 (Plaintiff acknowledging Ms. Corbitt said she "was losing faith" in Plaintiff's ability to remain in her role "because none of this is equitable or inclusive"); Ex. 13 at 3 (PIP directing Plaintiff to "[s]erve as a role model of inclusion"). As Ms. Corbitt explained to Plaintiff, she was terminated because "[Y]our performance is too up and down, you don't work well with others," and "I don't believe you can create an inclusive environment." Ex. 3 at 257:19–22, 659:11–661:8. Ms. Corbitt's stated reasons were obviously legitimate, and there is no (let alone sufficient) evidence that they were fabricated to conceal a true motive of racial animus.

While this alone defeats the claim, two additional undisputed facts make clear that Plaintiff's claim of race discrimination is unfounded and fails to present a triable claim. ***First***, Plaintiff does not dispute that (1) Ms. Corbitt hired Plaintiff; and (2) Ms. Corbitt was

the sole decision-maker on her termination (and the other actions) less than a year later. *Id.* at 43:11–25, 256:23–257:1, 657:10–12. "[W]here the same actor is responsible for both the hiring and firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) (affirming summary judgment for defendant where same person hired and fired the plaintiff within one year); *Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir. 2012) (presumption "may arise when the favorable action and termination are as much as a few years apart"). This is because "it hardly makes sense to hire workers from a group one dislikes . . . only to fire them." *Bradley*, 104 F. 3d at 270 (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)). Thus, "the evidence *rarely is* 'sufficient . . . to find that the employer's asserted justification is false' when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably" by hiring them in the first place. *Coghlan*, 413 F.3d at 1097 (emphasis and ellipsis in original). Plaintiff must make an "extraordinarily strong showing of discrimination" at the summary judgment stage—which she cannot do. *Id.*

***Second***, Plaintiff and Ms. Corbitt are both Black. Ex. 3 at 44:22–45:4. "When a decision maker is in the same [protected] group as the employee complaining about an adverse decision, the employee faces a more difficult burden in establishing that a discriminatory animus played a role in the decision complained about." *Patocs*, 2022 WL 2702507, at *10 (alteration in original). This is because "proof that the decisionmaker is a [member of] the same race as the plaintiff considerably undermines the probability that race was a negative factor in the employment decision." *Almon v. Goodyear Tire & Rubber Co.*, No. 07-4104-SAC, 2009 WL 1421199, at *6–7 (D. Kan. May 20, 2009) (collecting cases and granting summary judgment to defendant).

***2. The Hostile Work Environment Theory Fails.***

Plaintiff's hostile work environment theory also fails. Plaintiff must show "(1) that [she] was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

conditions of the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). "In evaluating the objective hostility of a work environment, the factors to be considered include the 'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McGinest*, 360 F.3d at 1113 (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)). Plaintiff must also show either that the hostile environment was "created by a supervisor" or, where "'the harasser is merely a coworker,'" that "'the employer knew or should have known of the harassment but did not take adequate steps to address it.'" *Id.* at 1118–19 (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001)).

There is no evidence Plaintiff was subjected to verbal or physical harassment of a "racial . . . nature," let alone such conduct that was sufficient to "alter the conditions of [P]laintiff's employment and create an abusive work environment." *Gregory*, 153 F.3d at 1074. Plaintiff testified that the single most hostile or abusive conduct she allegedly endured at SLP was "Jessica yelling at [her]" during the pavilion incident. Ex. 3 at 267:17–22. She testified that the second most hostile or abusive thing she experienced was Ms. Corbitt's general "treatment" of her. *Id.* at 267:23–268:4. Plaintiff also complained about being excluded from an HR meeting. *Id.* at 268:6–10. These are insufficient because "Plaintiff must provide evidence that hostile conduct was *based on her race* . . . and not simply on bad manners or rude coworkers." *Ali v. Peake*, No. CV 08-0298-PHX-DGC, 2010 WL 396291, at *5 (D. Ariz. Feb. 1, 2010) (emphasis added). Furthermore, because these alleged but "ordinary tribulations of the workplace" were the worst things Plaintiff experienced, she cannot show the necessary "extreme" conduct to amount to "a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff has also objected to being described as "aggressive" in the pavilion incident, suggesting this adjective is "racially charged." Ex. 10 at 4–5. There is no evidence that this word had anything to do with Plaintiff's race. As Ms. Corbitt explained to Plaintiff: "it wasn't one person who shared that your tone was elevated and you were aggressive in your

language[,] it was multiple people on the team . . . you get upset and when you are upset you can become unapproachable . . . have used inappropriate language and your frustration does become clearly visible." Ex. 12 at 2. Ms. Corbitt explained that this was "not connected to anything but the fact that all of us can act and respond aggressively." *Id.* In any event, "[s]imply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." *McGinest*, 360 F.3d at 1113. That is even more true with respect to two alleged comments made to others outside Plaintiff's presence. Ex. 3 at 72:11–76:4; *Nelson v. Zinke*, No. CV 16-135-M-DWM, 2018 WL 1083032, at *14 (D. Mont. Feb. 27, 2018) ("[i]solated incidents at which [Plaintiff] herself was not present" do not establish a hostile work environment).

Finally, Plaintiff's hostile work environment theory also fails for the independent reason that there is no evidence that any of this conduct was by Ms. Corbitt (or anyone else with supervisory authority over Plaintiff) or that SLP failed to take adequate steps to address any conduct by other employees of which it was aware. *McGinest*, 360 F.3d at 1118–19.

### C. Plaintiff's IIED Claim Fails (Count V)

Because Plaintiff's IIED claim is derivative of her retaliation and discrimination claims, it fails for the same reasons.[5] *See Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358, 2015 WL 1348503, at *12 (N.D. Cal. Mar. 25, 2015) (plaintiff may not pursue an IIED claim predicated on employment claims that do not survive summary judgment).

## V. <u>CONCLUSION</u>

For these reasons, SLP respectfully requests summary judgment in its favor on all remaining claims.

[5] Further, there is no evidence of "[e]xtreme and outrageous conduct . . . beyond all possible bounds of decency." *Christakis v. Deitsch*, 250 Ariz. 246, 250 (Ct. App. 2020) (internal quotation marks and citation omitted). "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary," *Mintz v. Bell Atl. Sys. Leasing Intern., Inc.*, 183 Ariz. 550, 554 (Ct. App. 1995) (citation omitted), and there is no such conduct here. Nor is there evidence of intent to cause emotional distress. *See id.* at 553–54.

DATED: August 27, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Malcolm A. Heinicke*

Malcolm A. Heinicke (*pro hac vice*)
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-290

*Attorneys for Defendant*
*Suns Legacy Partners, L.L.C.*